# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MILES ORLANDO BONTY,

                                    Plaintiff,

        v.

J. ESCUTIA, et al.,

                                    Defendants.

_____/

CASE NO. 1:06-cv-0129- OWW DLB PC

**ORDER REQUIRING PLAINTIFF TO FILE
SECOND AMENDED COMPLAINT,
OR NOTIFY COURT OF WILLINGNESS
TO PROCEED ONLY ON COGNIZABLE
EXCESSIVE FORCE CLAIMS AGAINST
DOE DEFENDANTS JOHN DOE 1 and
JOHN DOE 2 WITHIN THIRTY DAYS**

(Doc. 13)

I.      Screening Order

        A.      Screening Requirement

        Plaintiff Miles Orlando Bonty ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on February 6, 2006.  On June 23, 2006, plaintiff filed an amended complaint, which is the subject of the court's screening set forth below. (Doc. 13).

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

1

1   claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

2        A court may dismiss a complaint only if it is clear that no relief could be granted under any

3   set of facts that could be proved consistent with the allegations.  Swierkiewicz v. Sorema N. A., 534

4   U.S. 506, 514 (2002).  "'The issue is not whether a plaintiff will ultimately prevail but whether the

5   claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the

6   pleadings that a recovery is very remote and unlikely but that is not the test.'"  Jackson v. Carey, 353

7   F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also

8   Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the

9   opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir.

10  2001))).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations."

11  Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights

12  complaint may not supply essential elements of the claim that were not initially pled."  Bruns v. Nat'l

13  Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d

14  266, 268 (9th Cir. 1982)).

15       "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

16  exceptions," none of which applies to section 1983 actions.  Swierkiewicz v. Sorema N. A., 534 U.S.

17  506, 512 (2002); Fed. R. Civ. Pro. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short

18  and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. Pro.

19  8(a).  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is

20  and the grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512.  A court may dismiss a

21  complaint only if it is clear that no relief could be granted under any set of facts that could be proved

22  consistent with the allegations.  Id. at 514.  "'The issue is not whether a plaintiff will ultimately

23  prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may

24  appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the

25  test.'"  Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S.

26  232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need

27  suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262

28  F.3d 871, 977 (9th Cir. 2001))).  However, "the liberal pleading standard . . . applies only to a

plaintiff's factual allegations." <u>Neitze v. Williams</u>, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)).

B.      Summary of Plaintiff's Amended Complaint

Plaintiff is an inmate housed at Kern Valley State Prison ("KVSP") in Delano. Plaintiff names J. Escutia, B. Gricewich, Jeanne Woodford, N. Grannis, N. Dill, Gonzalez, J.D. Soto, R. Thomas, F. Reynosa, John Doe 1, John Doe 2, E. Lascano, D. Pear, H. Tyson, Doe 3, B. Haws, K. Reid, and D. Tyson as defendants ("defendants"). Plaintiff alleges that defendants falsely implicated plaintiff in an assault on KSVP staff that occurred in the dining hall on October 16, 2005. Plaintiff alleges that while his property was being packed to move him to Administrative Segregation ("ad-seg"), defendant Escutia allegedly found a dangerous weapon in his cell. Plaintiff contends that he spent 131 days in Administrative Segregation. Plaintiff is seeking money damages and equitable relief for the violation of his rights under the First, Eighth and Fourteenth Amendments of the United States Constitution.

I.      Plaintiff's First Amendment Retaliation Claim

Plaintiff alleges that prison staff members have been retaliating against him, and falsely implicated him in the staff assault on October 16, 2005, in violation of the First Amendment.

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution .
> . . shall be liable to the party injured in an action at law, suit in equity,
> or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . .  creates a cause of action for violations of the federal Constitution and laws." <u>Sweaney v. Ada County, Idaho</u>, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted.) Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. <u>See</u> <u>Monell v.  Department of Social Services</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). "'A person 'subjects' another to the deprivation of a constitutional right, within the meaning

of [§] 1983, if [that person] does an affirmative act, participates in another's affirmative acts or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 466 F.3d 676, 689 (9th Cir. 2006) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also be setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, No. 06-1995, 2007 WL 1374746, *2 (8th Cir. May 11, 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities.  However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation.  In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the

4

defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative segregation for filing grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff's amended complaint is devoid of any facts whatsoever to suggest that plaintiff was participating in any conduct protected under the First Amendment for which defendants engaged in retaliatory behavior. In fact, plaintiff has alleged no facts indicating why he believes defendants were retaliating against him, except to allege that defendant Thomas tried to clear plaintiff for double cell status, in order to "retaliate against plaintiff for being single cell". (Doc. 13, p.9:6). Plaintiff cannot possibly argue that defendants retaliated against him in violation of the First Amendment when plaintiff was not engaged in any activity protected by the First Amendment. Accordingly, plaintiff's allegations do not support a claim for retaliation under section 1983.

ii)    Plaintiff's Eighth Amendment Claim

Plaintiff alleges that immediately after the assault on staff on October 16, 2005, a team of correctional officers used excessive force while removing inmates from the area. Plaintiff alleges that John Does 1 and 2 used excessive force to restrain plaintiff, while defendants Reynoso and Lascano observed. Plaintiff alleges that other inmates asking for medical assistance were ignored. Plaintiff alleges violation of his Eighth Amendment rights against cruel and unusual punishment.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates

1    contemporary standards of decency, regardless of whether or not significant injury is evident.  Id.

2    at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force

3    standard examines de minimis uses of force, not de minimis injuries)).   However, not "every

4    malevolent touch by a prison guard gives rise to a federal cause of action."  Id. at 9.  "The Eighth

5    Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional

6    recognition de minimis uses of physical force, provided that the use of force is not of a sort

7    repugnant to the conscience of mankind."  Id. at 9-10 (internal quotations marks and citations

8    omitted).

9            "[W]henever prison officials stand accused of using excessive physical force in violation of

10   the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied

11   in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

12   Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper

13   to evaluate the need for application of force, the relationship between that need and the amount of

14   force used, the threat reasonably perceived by the responsible officials, and any efforts made to

15   temper the severity of a forceful response."  Id.  (internal quotation marks and citations omitted).

16   "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end

17   it."  Id.

18           Under federal notice pleading standards, plaintiff's allegations are sufficient to state a claim

19   against defendants John Doe 1 and John Doe 2. Fed. R. Civ. P. 8(a); Swierkiewicz v. Sorema N. A.,

20   534 U.S. 506, 512-15 (2002); Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004); Jackson v.

21   Carey, 353 F.3d 750, 754 (9th Cir. 2003); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-

22   26 (9th Cir. 2002). However, plaintiff's allegation that defendants Reynoso and Lascano stood and

23   observed the use of excessive force by John Does 1 and 2 falls short of stating a claim.  To state a

24   claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law

25   and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v.

26   County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  An officer can be held liable for

27   failing to intercede only if he had a "realistic opportunity" to intercede.  Cunningham v. Gates, 229

28   F.3d 1271, 1289 (9th Cir. 2000).  Plaintiff has alleged no facts that would support a claim against

1  defendants Reynoso and Lascano.

2                 iii)    <u>Plaintiff's Due Process Claims</u>

3       On October 6, 2005 plaintiff was placed in Administrative Segregation as a possible suspect

4  in the assault on prison staff.  Plaintiff states that on October 20, 2005, an investigation proved that

5  he was not an active participant in the staff assault, but that he was kept in ad-seg pending review

6  by the Institution Classification Committee (ICC) after an alleged weapon was found in his cell when

7  his property was being packed up, a charge plaintiff contends is false.  Plaintiff was found guilty of

8  possession of a dangerous contraband on December 20, 2005, and part of the punishment assessed

9  was the forfeiture of one-hundred twenty days of time credits.  Plaintiff alleges that he did not

10  receive his Form 115 Rules Violation Report until November 22, 2005 and that pursuant to CDC

11  hearing procedures, no time credits may be lost if the Form 115 is not provided to plaintiff within

12  15 days.  Plaintiff further states that he spent 131 days in ad-seg for having committed a "non

13  serious" violation, without any review, in violation of the Fourteenth Amendment right to due

14  process.  Throughout these events, plaintiff alleges that various defendants submitted reports

15  containing false information.

16                (a)    <u>Periodic Reviews</u>

17       The Due Process Clause protects prisoners from being deprived of liberty without due

18  process of law.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  In order to state a cause of action

19  for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty

20  interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause

21  itself or from state law.  <u>Hewitt v. Helms</u>, 459 U.S. 460, 466-68 (1983).  The Due Process Clause

22  itself does not confer on inmates a liberty interest in being confined in the general prison population

23  instead of administrative segregation.  <u>See</u> <u>Hewitt</u>, 459 U.S. at 466-68.  The existence of a liberty

24  interest created by prison regulations is determined by focusing on the nature of the deprivation.

25  <u>Sandin v. Conner</u>, 515 U.S. 472, 481-84 (1995).  Liberty interests created by prison regulations are

26  limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in

27  relation to the ordinary incidents of prison life."  <u>Id</u>. at 484.

28       Plaintiff does not have a protected liberty interest under state law in remaining free from ad-

seg.  Id.; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted).  In addition, assuming for the sake of argument that there existed a protected liberty interest, with respect to periodic reviews, plaintiff was placed in ad-seg on October 16, 2005.  On October 20, 2005, an Initial ASU Review was conducted by the ICC.  On December 20, 2005, Plaintiff's hearing was held, and plaintiff was found guilty of possession of a dangerous contraband.  On February 16, 2006, it appears that a further ICC hearing was held, and shortly thereafter plaintiff was returned to general population.  Although plaintiff is entitled to periodic reviews under federal law, Toussaint, 801 F.2d at 1100-01, the failure to conduct reviews every 30 days does not rise to the level of a federal due process violation.

(b)     Lost Time Credits

As a result of being found guilty of the disciplinary violation, part of the punishment assessed was the forfeiture of one-hundred twenty days of time credits.  Inmates have a protected liberty interest in their time credits.  Sandin, 515 U.S. at 477-78 (citing with approval Wolff v. McDonnell, 418 U.S. 539, 557 (1974) (state-created interest in shortened prison sentence is an interest of "real substance")).  However, where "success in a . . . [section] 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence."  Muhammad v. Close, 540 U.S. 749, 751, 124 S.Ct. 1303, 1304 (2004) (citing to Heck v. Humphrey, 512 U.S. 477 (1994)); Wilkinson v. Dotson, 544 U.S. 74, 81-2, 125 S.Ct. 1242, 1248 (2005); Edwards v. Balisok, 520 U.S. 641, 648 (1997).  Because plaintiff lost time credits and has not shown that the credits were restored, either via a petition for habeas corpus relief or through prison procedures, plaintiff may not pursue any claims for relief under section 1983 arising from the events relating to the issuance of the Rules violation Report or the disciplinary proceedings.

///

///

iv)   Supervisory Liability

Plaintiff names former Director Woodford as a defendant.  Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior.  When the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983.  See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff has not alleged any facts indicating that defendant Woodford personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black at 646.  Accordingly, plaintiff fails to state a claim against defendant Woodford under section 1983.

v)   Inability to Utilize Appeals Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

1    <u>Sandin</u>, 515 U.S. at 484.

2        "[A prison] grievance procedure is a procedural right only, it does not confer any substantive

3    right upon the inmates." <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993) (citing <u>Azeez v.</u>

4    <u>DeRobertis</u>, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); <u>see also</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th

5    Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance

6    procedure); <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure

7    confers no liberty interest on prisoner); <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988). "Hence,

8    it does not give rise to a protected liberty interest requiring the procedural protections envisioned by

9    the Fourteenth Amendment." <u>Azeez v. DeRobertis</u>, 568 F. Supp. at 10; <u>Spencer v. Moore</u>, 638 F.

10    Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve

11    as the basis for liability under a § 1983 action. <u>Buckley</u>, 997 F.2d at 495.

12        Plaintiff contends that defendants Gricewich and N. Grannis hindered plaintiff's ability to

13    grieve the incidents giving rise to this action. These defendants' actions in responding to plaintiff's

14    appeals, alone, cannot give rise to any claims for relief under section 1983.

15        Inmates have a fundamental constitutional right of access to the courts. <u>Lewis v. Casey</u>, 518

16    U.S. 343, 346 (1996). The right of access is merely the right to bring to court a grievance the inmate

17    wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions.

18    <u>Id</u>. at 354. The government is not required to enable the inmate to discover grievances or to litigate

19    effectively once in court. <u>Id</u>. An inmate claiming interference with or denial of access to the courts

20    must show that he suffered an actual injury. <u>Id</u>.

21        Plaintiff's complaint does not contain any factual allegations that support a claim that he was

22    denied access to the courts. Because 42 U.S.C. § 1997e(a) mandates exhaustion as a prerequisite

23    to filing suit, the failure of prison authorities to allow a prisoner to exhaust may subsequently cause

24    the prisoner to suffer an actual injury if his suit is dismissed for failure to exhaust. However, such

25    a failure on the part of prison officials may not result in any actual injury. A prisoner's concern that

26    he may in the future suffer a dismissal of his suit or suits on the ground that he failed to complete

27    the grievance procedure is insufficient to meet the actual injury requirement. Indeed, a number of

28    courts have declined to dismiss for failure to exhaust where prison officials have rendered the

process itself unavailable, either through the failure to respond in a timely manner or through the failure to respond at all.  Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) (the failure to respond to a grievance within the policy time limits renders remedy unavailable); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (when prison officials fail to respond, the remedy becomes unavailable, and exhaustion occurs); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) (district court did not err when it declined to dismiss claim for failure to exhaust where prison failed to respond to grievance); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (when a valid grievance has been filed and the state's time for responding has expired, the remedies are deemed exhausted); Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998) (when time limit for prison's response has expired, the remedies are exhausted); see also Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (recognizing that a remedy prison officials prevent a prisoner from utilizing is not an available remedy); Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) (formal grievance procedure not available where prison officials told prisoner to wait for termination of investigation before filing formal grievance and then never informed prisoner of termination of investigation); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy prison officials prevent a prisoner from utilizing is not an available remedy).  In joining the Eighth and Fifth Circuits with respect to this issue, the Seventh Circuit Court stated that it "refuse[d] to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to the grievances.'"  Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (citing Goodman v. Carter, No. 2000 C 948, 2001 WL 755137, at *3 (N.D.Ill. July 2, 2001)).

Thus, it is not a foregone conclusion that plaintiff will ultimately suffer dismissal because his ability to utilize the appeals process has been hindered.  Until plaintiff suffers some actual prejudice with respect to his suits and this prejudice results from prison officials' failure to respond to his appeals, plaintiff has not suffered an actual injury.  At this juncture, plaintiff's claim stemming from his problems with the grievance process is insufficient to support a claim for relief for violation of plaintiff's right of access to the courts.

///

///

D. <u>Conclusion</u>

Plaintiff's amended complaint states a claim against defendants John Doe 1 and John Doe 2 for violating his constitutional rights through use of excessive physical force.  However, plaintiff's complaint does not state any other claims upon which relief may be granted under section 1983.  The court will provide plaintiff with the opportunity to file a second amended complaint, if plaintiff wishes to do so.

If plaintiff does not wish to file a second amended complaint and wishes to proceed against defendants John Doe 1 and John Doe 2 on his excessive force claims only, plaintiff may so notify the court in writing.  The court will then issue Findings and Recommendations recommending that the remaining claims and defendants be dismissed from this action, and will forward plaintiff two summons and two USM-285 forms to fill out and return to the court.  Upon receipt of these documents, the court will direct the United States Marshal to initiate service of process on defendants John Doe 1 and John Doe 2.

In the event that plaintiff does wish to amend his complaint, plaintiff is advised Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  <u>See</u> <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  <u>See</u> <u>Ellis v. Cassidy</u>, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>May v. Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff is further advised that it is inappropriate to attach exhibits to a complaint.  <u>See</u> Rule 8, Federal Rules of Civil Procedure.  The Court cannot serve as a repository for the parties' evidence.

Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) should not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the court).   At this point, the submission of evidence is premature as the plaintiff is only required to state a prima facie claim for relief.   Thus, in amending his complaint, plaintiff should simply state the facts upon which he alleges a defendant has violated his constitutional rights and **refrain from submitting exhibits**.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send plaintiff a civil rights complaint form;

2.      Within **thirty (30) days** from the date of service of this order, plaintiff must either:

     a.      File a second amended complaint curing the deficiencies identified by the court in this order, or

     b.      Notify the court in writing that he does not wish to file a second amended complaint and wishes to proceed only against defendants John Doe 1 and John Doe 2 on his excessive force claims;

3.      If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order; and

4.      Plaintiff's request for the appointment of counsel is HEREBY DENIED.


IT IS SO ORDERED.

**Dated:   April 30, 2008**                                   **/s/ Dennis L. Beck**
                                                        UNITED STATES MAGISTRATE JUDGE

13